Filed 11/19/14  In re E.M. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| In re E.M., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E061044 |
| Plaintiff and Respondent, | (Super.Ct.No. RIJ098870) |
| v. | OPINION |
| R.M. et al., | |
| Defendants and Appellants. | |

APPEAL from the Superior Court of Riverside County.  Jacqueline C. Jackson, Judge.  Affirmed.

Nicole Williams, under appointment by the Court of Appeal, for Defendant and Appellant, R.M.

Diana W. Prince, under appointment by the Court of Appeal, for Defendant and Appellant, J.H.

1

Gregory P. Priamos, County Counsel, and Julie Koons Jarvi, Deputy County Counsel, for Plaintiff and Respondent.

Appellant R.M. (father) appeals from the juvenile court's summary denial of his Welfare and Institutions Code[1] section 388 petition regarding his son, E.M. (the child). Appellant J.H. (mother) filed a separate brief, but simply joins in father's argument, and further claims that should we reverse the termination of father's parental rights, the order terminating her parental rights should be reversed as well.[2] We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[3]

On April 25, 2013, the Riverside County Department of Public Social Services (DPSS) filed a section 300 petition on behalf of the child, who was two years old at the time. The petition alleged that he came within section 300, subdivisions (b) (failure to protect) and (g) (no provision for support). The petition included allegations that law enforcement executed a search warrant on the family's home and seized six grams of methamphetamine, as well as drug scales and paraphernalia. Mother and father (the parents) were subsequently arrested and charged with child endangerment,

[1] All further statutory references will be to the Welfare and Institutions Code, unless otherwise noted.

[2] Because mother simply joined in father's arguments on appeal, this opinion will focus mainly on facts regarding father.

[3] On the court's own motion, we incorporated the record in case No. E059022, in the record of the instant case, case No. E061044.

2

possession/sales/transportation of a controlled substance, and being under the influence of a controlled substance. The petition further alleged that the home was unsafe and unsanitary, with insufficient food for the child and inappropriate sleeping arrangements. In addition, the parents sold drugs out of the home and allowed known drug users and convicted felons to frequent and/or reside there. The petition also alleged that the parents engaged in domestic violence, mother had a history of substance abuse, both parents had criminal histories, and mother had previously been provided with family maintenance and reunification services with regard to six of her other children, but failed to benefit. Her parental rights were terminated as to all six of them. Additionally, the petition alleged that father had a history with the Los Angeles County Children's Services Division for allegations of general neglect related to sexual abuse against the minor mother of another one of his children, and that he failed to reunify with that child and had his parental rights terminated.

The social worker filed a detention report and stated that on April 23, 2013, she met law enforcement at the parents' residence. She was advised when law enforcement arrived father was under the influence of a controlled substance, and he had a methamphetamine pipe and several grams of methamphetamine in his possession. Other people at the residence were also under the influence and had methamphetamine in their possession. Mother was downstairs with the child and tried to run upstairs to avoid law enforcement. She was under the influence of a controlled substance and admitted that she had smoked methamphetamine the day before. The police confiscated six grams of

methamphetamine, as well as drug paraphernalia from the residence. According to law enforcement, methamphetamine was being sold out of the home. The residence was in a deplorable condition, with papers, boxes, and other items stacked everywhere, throughout the house. The master bedroom was cluttered with clothing, shoes, nail polish, and an adult sex toy. There were many empty liquor bottles on the closet floor. There were no toys, books, or age appropriate items for the child anywhere in the house. There was very little food in the residence.

The police interviewed mother, with the social worker present. Mother said she and father were not married, but he was the child's biological father. She said they shared a bedroom upstairs, and the other rooms in the home were rented out. She and father slept in a twin bed together, and the child slept in a bed that father made out of a toy box.

The police also interviewed father, who said that he and mother had been in a relationship for four years, and that he was the child's biological father. Father disclosed that he was previously arrested for having sex with a minor, who was the mother of his other child, R.M. That child was adopted by the maternal grandparents. Father had two older children, who lived with their mother. Father was not currently paying any child support or having visitation with any of his children. He admitted that he began using methamphetamine at age 21 and had used off and on since then. He was 33 years old at the time of the current arrest. He also said he started smoking marijuana when he was younger, and admitted that he smoked it one month prior. Father admitted he was aware

4

that he was placing the child at risk by his methamphetamine use and by allowing felons with drugs into the residence; nonetheless, he continued to engage in such conduct.

At a detention hearing on April 26, 2013, the court found father to be the presumed father of the child, and it detained the child in foster care. The court ordered visitation to be twice a week.

*Jurisdiction/disposition*

The social worker filed a jurisdiction/disposition report on May 15, 2013, recommending that the court declare the child a dependent and deny both parents reunification services, pursuant to section 361.5, subdivision (b)(10) and (11). The social worker reported that father lost custody of his older child, R.M., after his family reunification services were terminated on September 12, 2005. R.M. was adopted by his maternal grandparents. Due to father's inability to reunify with R.M., and his failure to maintain contact with DPSS in the current case, the social worker recommended that the court deny reunification services as to the child, pursuant to section 361.5, subdivision (b)(10) and (11). The social worker reported that father appeared unmotivated to reunify with the child. He had not contacted DPSS to visit the child, obtain approval for services, or provide a working contact number. The social worker stated that father failed to acknowledge his substance abuse and failed to understand how his issues impacted the physical safety of the child.

The social worker filed an addendum report on June 11, 2013. She stated that father was reportedly attending the MFI Recovery Program, and that he was starting to

attend Narcotics Anonymous meetings.  Father requested visits with the child.  The social worker contacted father's counselor at the MFI Recovery Center, and she said that father enrolled in the program on May 15, 2013.  He was required to attend three times a week, and was regularly attending, with the exception of one missed one session.  The counselor reported that father tested positive for methamphetamine on June 3, 2013.  The social worker further reported that father had two visits to date, and both went well.  However, the social worker still recommended that the child be declared a dependent, and that the parents be denied reunification services.

A contested jurisdiction/disposition hearing was held on June 16, 2013.  The court sustained the petition and declared the child a dependent of the court.  It then denied reunification services to both mother and father, pursuant to section 361.5, subdivision (b)(10) and (11), and set a section 366.26 hearing.

*Section 366.26 and Section 388*

The social worker filed a section 366.26 and section 366.3 permanency status review report on October 2, 2013.  The social worker recommended that the permanent plan for the child be adoption, but that the section 366.26 hearing be continued for 120 days in order for a suitable adoptive home to be located for the child.  The social worker reported that the parents had not maintained contact with her regarding the welfare of the child and had not been consistent in visiting him.  The social worker noted that when the parents did participate in visits, they did not seem to know how to interact with the child.  They would stand off to the side and watch him play on the playground equipment.  They

would also remove themselves to smoke cigarettes during the visits. Additionally, the social worker observed that the child recognized his parents and used to cry when they had to leave the visits; however, he no longer cried when they had to leave. The social worker recommended that visitation be reduced to supervised monthly visits.

The social worker subsequently filed an addendum report on January 17, 2014, and recommended that the section 366.26 hearing be rescheduled for April 14, 2014.

On February 19, 2014, mother filed a section 388 petition, requesting the court to grant her six months of reunification services. As to changed circumstances, mother alleged that she completed intensive outpatient treatment at MFI and was attending 12-step meetings at least twice per week. She also alleged that she submitted to random drug testing, and all results were negative. As to best interest of the child, mother alleged that she and the child shared a strong bond, which would be permanently damaged if she was not allowed the opportunity to reunify. The court summarily denied mother's petition since the proposed change of order did not promote the best interest of the child.

On February 27, 2014, father filed a section 388 petition requesting the court to grant him six months of reunification services. As to changed circumstances, father alleged that he completed inpatient and outpatient substance abuse programs and anger management and parenting classes. He also alleged that he continued to visit the child to sustain their bond, and that he had a stable residence. As to best interest of the child, father alleged that the child was in his care for 35 months, during which time he and the child created a strong bond. Father alleged that he continued to share this bond during

visits, and that it would be in the child's best interest to allow him to reunify. The court denied father's petition without a hearing because the proposed change of order did not promote the best interest of the child.

On April 4, 2014, the social worker filed a section 366.3 postpermanency status review report. The social worker reported that visitation between the parents and the child occurred once a month between November 2013 and April 2014. The person who monitored the visits said they went well. The social worker continued to opine that it would be detrimental to return the child to father. She reported that he had been attending drug treatment programs, but was new to his sobriety. He was also not currently employed. The social worker further reported that the child had lived in a stable home environment with his current caregivers since December 19, 2013. The family was meeting all of his medical, dental, and emotional needs. The relationship between the caregivers and the child was strong, and the caregivers were committed to adopting him. The child referred to the prospective adoptive parents as his mother and father.

On April 24, 2014, the court held a combined section 366.26 hearing and section 366.3 hearing. Father testified at the hearing and said that the child was in his care for almost three years before he was detained. He said after the child was detained, he would visit the child. The visits took place at the park, and they would play ball, fly kites, and play on the swings and playground. Father said that the child called him "Papa." When asked how it would benefit the child for him to remain in his life, father stated that "you

only have one father," that "[n]obody is perfect," and that he wanted to be there for the child.

After hearing testimony, the court noted that it had read and considered all the reports submitted. The court opined that father's bond with the child was not sufficient to overcome the benefit of permanency that adoption would offer. The court found it likely that the child would be adopted and terminated the parental rights of mother and father.

## ANALYSIS

### The Court Properly Denied Father's Section 388 Petition

Father argues that the court erred in summarily denying his section 388 petition. He claims that he should have been granted an evidentiary hearing since he made the requisite prima facie showing that the proposed change would promote the child's best interest. The People argue that father's notice of appeal was untimely and that the trial court properly denied his petition. Assuming arguendo that father's notice of appeal was timely filed, we conclude that the court properly denied his section 388 petition.

A. *The Court Did Not Abuse its Discretion*

"A juvenile court order may be changed, modified or set aside under section 388 if the petitioner establishes by a preponderance of the evidence that (1) new evidence or changed circumstances exist and (2) the proposed change would promote the best interests of the child. [Citation.] A parent need only make a prima facie showing of these elements to trigger the right to a hearing on a section 388 petition and the petition should be liberally construed in favor of granting a hearing to consider the parent's

9

request.  [Citation.]  [¶]  However, if the liberally construed allegations of the petition do not make a prima facie showing of changed circumstances and that the proposed change would promote the best interests of the child, the court need not order a hearing on the petition.  [Citations.]" (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 806.)  "In determining whether the petition makes the necessary showing, the court may consider the entire factual and procedural history of the case.  [Citation.]" (*In re Justice P.* (2004) 123 Cal.App.4th 181, 189.) We note that "[a]fter the termination of reunification services, the parents' interest in the care, custody and companionship of the child are no longer paramount.  Rather, at this point 'the focus shifts to the needs of the child for permanency and stability' [citation], and in fact, there is a rebuttable presumption that continued foster care is in the best interest of the child.  [Citation.]  A court hearing a motion for change of placement at this stage of the proceedings must recognize this shift of focus in determining the ultimate question before it, that is, the best interest of the child." (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317 (*Stephanie M.*).)

Father's section 388 petition sought the provision of reunification services for six months.  The juvenile court did not abuse its discretion in denying the petition, as father was unable to demonstrate that a changed order was in the best interest of the child.  "[A] primary consideration in determining the child's best interest is the goal of assuring stability and continuity." (*Stephanie M.*, *supra*, 7 Cal.4th at p. 317.)  For best interest of the child, father's petition merely stated that the child was in his care for 35 months, and during that time he and the child developed a bond, which they continued to share during

10

visits. He then simply asserted that it would be in the child's best interest to allow him to reunify with the child. Father reiterates his position on appeal by asserting that the child has spent most of his life in father's care and that their relationship is so strong that it would be in the child's best interest to reunify with him. Although the child did spend most of his life in father's care, father failed to provide adequate care during that time. According to law enforcement, methamphetamine was being sold out of the family residence. The social worker observed that the residence was in a deplorable condition, with papers, boxes, and other items stacked everywhere. There was very little food in the residence, and there were no toys, books, or age appropriate items for the child anywhere in the house. Father admitted that he placed the child at risk by his methamphetamine use and by allowing felons with drugs into the residence. Father's circumstances did not assure the court of any stability or continuity.

Moreover, although father did have visits with the child, there was little evidence of any bond. Father was not consistent in visiting the child, and when he did visit, he did not seem to know how to interact with him. The social worker reported that father would stand off to the side and watch the child play on the playground equipment. Father would also remove himself to smoke cigarettes during the visits. Additionally, the social worker observed that the child recognized father and used to cry when he had to leave; however, the child no longer cried at the end of visits. In sum, father clearly failed to show *how* it would be in the child's best interest to grant him reunification services.

Furthermore, the juvenile court properly recognized the shift of focus from the parent's interest in the care and custody of the child to the child's need for permanency and stability. (*Stephanie M*., *supra*, 7 Cal.4th at p. 317.) The child had lived in a stable home environment with his current caregivers since December 19, 2013. The family was meeting all of his medical, dental, and emotional needs. The relationship between the caregivers and the child was strong, and the caregivers were committed to adopting him. The child referred to the prospective adoptive parents as his mother and father.

We conclude that the court properly determined that father had not carried his burden of proof and denied his section 388 petition. We note mother's additional contention that should the order terminating father's parental rights be reversed, the judgment terminating her parental rights should be reversed as well. In light of our determination *ante*, we need not address this contention.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

HOLLENHORST<br>Acting P. J.

We concur:

RICHLI
     J.

CODRINGTON
     J.